Daniel W. SHELLEY, et al., Plaintiffs,

v.

**TRAFALGAR HOUSE PUBLIC LTD. CO., et al., Defendants.**

**Civil No. 91–1213 (DRD).**

United States District Court, D. Puerto Rico.

June 4, 1997.

John F. Malley–Vega, McConnell Valdes, San Juan, PR, for Plaintiffs.

Theodore J. Theophilos, John G. Hutchinson, Elizabeth M. Sacksteder, Sidley & Austin, New York City, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION and ORDER

DOMINGUEZ, District Judge.

The Puerto del Rey Marina Project saga continues. Today's chapter pertains to Defendant's request that the Court grant their motion for a judgment on the pleadings to dismiss subparagraph (c), (d), and (e) of paragraph 32 and paragraph 33 of the amended complaint. (Docket No. 85). Pending are also Plaintiffs' opposition (Docket No. 91), Defendants' reply and supplement (Docket Nos. 93 & 94), and Plaintiffs' surreply (Docket No. 101). The Court hereby GRANTS in part and DENIES in part Defendants' motion. (Docket No. 85). The Court shall **grant** the dismissal of subparagraph (e) of paragraph 32 and paragraph 33 of the amended complaint because said damages are outside the scope of the extra contractual cause of action which the Court has authorized.[1] However, the Court finds that under the Puerto Rico tort doctrine of *culpa in contrahendo,* the breach of good faith negotiations, encompass not only out-of-pocket expenses but also damages for lost opportunities that are not speculative in nature. The Court shall permit Plaintiffs to plead lost opportunity costs under the aforementioned cause of action by filing an amended complaint within fifteen (15) days.

## I. Introduction

This Court previously found that there existed no contract between Plaintiffs and Defendants in regard to a marina development. As such, this Court shall not award any damages sounding in contract, i.e. lost profits resulting from a breach of contract. As was cleverly stated by Judge Perez–Gimenez, Plaintiffs can not now "achieve by crook what they [could] not achieve by hook—seeking a back door to expectation damages by means of expanding pre-contractual tort liability to cover all damages suffered as a result of the failed negotiations." *Satellite Broad. Cable, Inc. v. Telefónica de España,* 807 F.Supp. 218, 222 (D.P.R.1992).

Although the Court in the instant case found that there was no contract, the Court determined that nevertheless Defendants may be liable[2] under the extra contractual doctrines of promissory estoppel or *culpa in contrahendo.* Today, the Court shall analyze the damages pursuant to *culpa in contrahendo.*[3]

---

1. The Court accepts Plaintiffs waiver of their allegations of punitive damages included in paragraph 33 of the Amended Complaint. Nonetheless, as a matter of law, punitive damages are inappropriate in this context under either New York or Puerto Rico law.

2. There existed genuine issues of material fact, i.e. bad faith, to be decided by the trier of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

3. *See supra* note 7.

The issue then is to determine the scope of damages under the aforementioned doctrine. After a careful analysis of the parties' submittals, Puerto Rico supreme court and federal jurisprudence, and of civil code treatise writers, this Court defines the available remedy under the doctrine of *culpa in contrahendo* as reliance damages, encompassing both out-of-pocket expenses and non-speculative lost opportunity costs. There exist, however, two hurdles before Plaintiffs can be awarded lost opportunity costs: (1) was there bad faith on the part of Defendants; and (2) the lost opportunity costs can not be speculative in nature.

## II. History of the Case

■ The present Opinion and Order merely pertains to the scope of damages, via a motion pursuant to Fed.R.Civ.P. 12(c).[4] In analyzing a motion to dismiss, a court examines a complaint in the light most favorable to a plaintiff. The standard provides that a court must accept as true all well-pleaded allegations within the complaint and indulge all reasonable inferences in favor of a plaintiff. *See Brown v. Hot, Sexy & Safer Productions, Inc.*, 68 F.3d 525, 530 (1st Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996); *Clarke v. Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21, 22 n. 1 (1st Cir.1995).

The pertinent facts are recited in *Shelley v. Trafalgar House Public Ltd. Co.*, 918 F.Supp. 515 (D.P.R.1996). The Court will thus summarize the factual scenario. Sometime in 1988, Plaintiffs, who were planning the development of a marina village in Fajardo, were approached by Defendants, who expressed an interest in becoming involved in the marina village. Apparently, negotiations continued between the parties until October 24, 1989. On said date both parties signed a document entitled "Joint Venture in Puerto Rico." This document discussed several phases of development, construction, as well as equity participation. However, the document included a fatal clause, which stated that the document was not binding on the parties.[5] On March 11, 1996, the Court determined that the joint venture letter was not a contract and merely an agreement to agree. *Trafalgar House*, 918 F.Supp. at 522. This Court then determined that the only viable claim was that of a pre-contractual cause of action, promissory estoppel or *culpa in contrahendo*. Plaintiffs then moved this Court to reconsider the March 11th Opinion and Order. On this same date, the Court affirmed the prior decision. Today, this Court must decide the scope damages under the aforementioned pre-contractual cause of action.

## III. *Culpa in Contrahendo*

■ In the March 11, 1996, Opinion and Order, the Court determined that although there was a contractual choice of law clause, Puerto Rico law was applicable to the *culpa in contrahendo* tort claim. The mere determination that there is no contract does not absolve the withdrawing party from all liability. Although there is the dissolution of contractual liability, in a civil code system there is the possibility of extra contractual liability. Puerto Rico recognizes the duty to continue negotiations in good faith. The unjust withdrawal of said negotiations is recognized as the tort doctrine of *culpa in contrahendo*. *See* Civil Code art. 1802, P.R.Laws Ann. tit. 31 § 5141 (1990).[6] "Preliminary negotiations ... generate a social relationship that imposes on the parties a duty to act

---

4. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R.Civ.P. 12(c).

5. It is not possible at this time to enter into a totally binding agreement because there are a number of matters ... which have still to be clarified to our satisfaction ... [I]t is the intention of the [parties] to endeavor to resolve all outstanding matters and to enter into a legally binding Shareholders' Agreement within [90 days].

*See* Docket No. 7, October 24, 1989, Joint Venture Letter.

6. The Supreme Court of Puerto Rico categorized *culpa in contrahendo* as an extra contractual cause of action pursuant to Article 1802 of the Puerto Rico Civil Code. This article provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31 § 5141 (1990).

in good faith." *Producciones Tommy Muñiz, Inc. v. COPAN,* 113 D.P.R. 517, 526, 1982 WL 210537 (1982).

In 1982, the Puerto Rico supreme court first applied said doctrine in the case of *Producciones Tommy Muñiz v. COPAN,* 113 D.P.R. 517. In said case, the chairman of the committee organizing the Panamerican Games in Puerto Rico began to solicit bids from television producers. *Id.* at 518. After submitting the highest bid, Plaintiff commenced negotiations with Defendant to formalize a contract for the broadcast of the games. *Id.* at 519. After several draft contracts and a few disagreements between the parties, Defendants withdrew from those negotiations and instead contracted with the commonwealth government, permitting them to broadcast the games on their stations. *Id.* at 520. Plaintiffs sued and the trial court determined that Defendants were liable under the theory of *culpa in contrahendo. Id.* at 521. The supreme court determined that Plaintiff had a reasonable expectation to the consummation of a final contract as a result of the negotiations with Defendant, and as such, Defendant's withdrawal was unjustified and demonstrated a breach of good faith. *Id.* at 531.

The rationale was simple. Parties have a right to withdraw from negotiations, but the civil code system recognizes that the exercise of said right "is not devoid of liability when it is carried out in an abusive manner." *Producciones,* 113 D.P.R. 517 (1982). The court provided further guidance by enumerating six factors that should be considered in determining the existence of *culpa in contrahendo.* Those factors are as follows: (1) the development of the negotiations; (2) the commencement of the negotiations; (3) the direction of the negotiations; (4) the conduct of the parties throughout this time; (5) the stage at which the negotiations ended; and (6) the reasonable expectations of the parties in the consummation of the contract. *Id.* at 530.

In addition to *Producciones,* this doctrine has been discussed in a few other Puerto Rico supreme court cases, as well as in federal district court cases from Puerto Rico. *See Vila & Hnos., Inc. v. Owens Illinois De P.R.,* 117 D.P.R. 825, 836 n. 15 (1986) (finding that the facts of the case did not support a claim under *culpa in contrahendo* ); *Torres v. Gracia,* 119 D.P.R. 698, 707 (1987) (determining that the facts did not demonstrate that Plaintiff had a reasonable expectation in the consummation of the contract); *K–Mart Corp. v. Davis,* 756 F.Supp. 62, 69 (D.P.R.1991) ("[P]reliminary negotiations can indeed create a duty to deal in good faith."); *Satellite Broadcasting Cable, Inc. v. Telefónica de España, S.A.,* 807 F.Supp. 210, 217 (D.P.R. 1992) (finding that although there was no contract, defendants were liable under *culpa in contrahendo* "defendants' behavior was in violation of pre-contractual duties of good faith and best efforts."). Notwithstanding the Puerto Rico supreme court's labeling of *culpa in contrahendo* as a restrictive doctrine, the fact is that said doctrine is recognized and this particular case may fall within the purview of said "restrictive" doctrine. *See Torres,* 119 D.P.R. at 710. Of course, such a determination is for the trier of fact. The Court now moves to the scope of damages issue.

## IV.   Damages [7]

■ The following damages are the subject of the motion to dismiss:

---

7. Although this Court has decided to only pursue the *culpa in contrahendo* claim, instead of the promissory estoppel raised *sua sponte* by this Court, this Court finds that the damages under both promissory estoppel and *culpa in contrahendo* are identical. Promissory estoppel permits only reliance damages and other courts have refused to extend the remedy to include expectation damages. *See Goodstein Construction Corp. v. City of New York,* 80 N.Y.2d 366, 590 N.Y.S.2d 425, 431, 604 N.E.2d 1356, 1362 (holding that breach of agreement to negotiate in good faith did not entitle plaintiff to lost profits.) "[A]n 'award based on [the expectation interest]

would give the injured party the 'benefit of the bargain' that was not reached. But if no agreement was reached, there was no way to measure the lost expectation.' " *Id.,* 590 N.Y.S.2d at 430, 604 N.E.2d at 1361 (quoting 1 Farnsworth, Contracts § 3.26a, at 314). Although *Goodstein* provides that for such a cause of action plaintiff could recover out-of-pocket expenses, this Court is not convinced that lost opportunity costs would not have been awarded except that the issue was not before the court. New York adheres to the Restatement (Second) of Contracts which provides that reliance damages include

32c. Loss of revenues and operating loss at the marina, $12,233,000;

d. Loss of proceeds from sale of 60% of the project to Trafalgar House, $14,040,000;

e. Lost profits from the Shelleys' share of the project, $40,000,000.

Defendants urge that the aforementioned damages be quashed.

Unfortunately the Puerto Rico supreme court has provided little guidance as to the applicable remedies under this unique tort doctrine. After a careful analysis of various sources, this Court is convinced that the doctrine of *culpa in contrahendo* encompasses only reliance damages. *Satellite,* 807 F.Supp. at 222.

As per this issue, this Court finds the decision in *Satellite* to provide much guidance. In *Satellite,* the district court found defendant liable under *culpa in contrahendo* and held that "withdrawal from pre-contractual negotiations gives rise to liability in the form of reliance damages." 807 F.Supp. at 222. *See also Torres,* 119 D.P.R. at 703–04 n. 2 ("[T]he party that provoked reliance [may] be obliged to indemnify the other with costs.").

As conceded by Defendants, Plaintiffs are entitled to out-of-pocket expenses. In fact, Defendants argue that Plaintiffs are entitled to reliance damages. Reliance damages are defined as those remedies necessary to place the injured party, who in relying on negotiations to consummate a contract changed his position, in the same position as he was prior to relying on said negotiations. But reliance damages are more than merely out-of-pocket expenses. Reliance damages also include damages for lost opportunities, specifically in the context of *culpa in contrahendo.*

The concurrence by Justice Dávila in *Producciones,* the seminal case of *culpa in contrahendo,* is helpful in determining the scope of damages. Justice Dávila states that the damages should include both out-of-pocket expenses as well as those losses incurred by "not being able to take advantage of favorable opportunities." *Producciones,* 113 D.P.R. at 540. Of particular interest, as per the scope of damages, is the dissent in *Producciones* and the logical negative inference derived from the opinion by Justice Diaz Cruz. The dissent discusses the extent of damages, stating that "the decision of the Court should be limited to awarding reliance *expenses* to Producciones Tommy Muñiz, Inc." as opposed to broader damages. *Id.* at 539. (emphasis in original). The logical conclusion is that since Plaintiff was only in reality entitled to expenses exclusively then the majority must have awarded more than mere expenses. Defendants contend that *Satellite* concludes that under *culpa in contrahendo,* Plaintiffs are only entitled to out-of-pocket expenses. This Court disagrees; the issue of lost opportunity costs was not before the court in *Satellite.*

The civil code treatise writers provide a further independent basis for awarding lost opportunity costs. *See* Moreno–Quesada, Bernardo, *La Oferta de Contrato* 57–58 (1963) (stating that lost opportunity costs should be awarded when there is a causal connection between the lost opportunity and the arbitrary withdrawal, although the trier of fact will be the final arbiter of the damages to be compensated for pre-contractual liability). *See also* 2,1 Ruggiero, Roberto, *Instituciones de Derecho Civil* 130–31 (providing that the negative interest should be awarded in culpa in contrahendo cases and that it should be limited to "expenditures and losses caused by having lost the opportunity to enter into another valid contract."). Nevertheless, there are treatise writers who believe that *culpa in contrahendo* should not include compensation for foregone opportunities. *See* 1 Diez–Picazo, Luis, *Fundamentos del Derecho Civil Patrimonial* 204 (2d ed. 1983) ("[I]t seems that [compensation for the doctrine of *culpa in contrahendo* should not include the loss of more favorable offers that would have been formulated during that

"expenditures made in preparation for performance or in performance," obviously including lost opportunity costs. Restatement (Second) of Contracts § 349 (1981). This Court is aware that most courts generally do not award lost opportunity costs because said costs are so speculative. Thus, under both doctrines, Plaintiffs would be limited to reliance damages, out-of-pocket expenses as well as non-speculative lost opportunity costs.

time."]). This Court, faced with two opposing views, must decide which path to follow. The Court finds the reasoning of the former treatise writers more compatible with the interpretation of article 1802. In Puerto Rico, under article 1802, the doctrine of extra contractual liability is very broad. In 1994, the Puerto Rico supreme court defined the scope of this liability. *" 'Injury is any material* or moral *loss suffered by a person, either in its natural rights or in its property or patrimony, brought about by violation of a legal provision and which is chargeable on another party.'"* *Santini Rivera v. Serv Air, Inc.,* 94 J.T.S. 121, 182–83 (P.R.1994) (emphasis added) (quoting *Garcia Pagan v. Shiley Caribbean,* 122 D.P.R. 193, 205–06, 1988 WL 580765 (1988)). As a result, the damages for lost opportunities shall be authorized if they are not speculative in nature.

■ Plaintiffs argue that they are entitled to expectation damages otherwise known as benefit-of-the-bargain damages. The Court refuses to extend the doctrine of *culpa in contrahendo* to those reaches. A final agreement was never reached; Plaintiffs are then not to receive the benefit of the bargain. *Satellite,* 807 F.Supp. at 222.

In sum, under *culpa in contrahendo,* the lost profits included within subparagraph e must be dismissed because they fall outside the scope of reliance damages and all expectation damages are clearly unwarranted under the *culpa in contrahendo* theory. Subparagraphs c and d of section 32 of the Amended Complaint may in fact be reliance damages. Further factual submissions will have to be developed to determine the classification of the damages as compensable reliance damages.

**IT IS SO ORDERED.**